STEKETEE *v.* PRATT.

1. LANDLORD AND TENANT—SURRENDER OF LEASE—EVIDENCE.
   Where a lessee gave 30 days' notice of intention to quit, and the parties then, without waiving any other rights or admitting any liability, agreed that, if the lessor's attorney should procure a satisfactory tenant, no claim would be made on the lessee for rent after the commencement of such latter tenant's term, and at the end of the 30 days the lessee took the key to the lessor, who told the lessee to leave it with the lessor's attorney, no intention of the lessor to surrender his rights under the lease by acceptance of the key is shown.

2. SAME—PAROL AGREEMENT FOR LEASE—STATUTE OF FRAUDS.
   The tenancy is not at will, but from year to year, or at least for a year, where entry was under a parol agreement for a lease for three years, at a specified annual rental, payable monthly in advance.

Error to Emmet; Adams, J.   Submitted October 24, 1899.   Decided December 2, 1899.

*Assumpsit* by George G. Steketee against Charles R. Pratt for rent.   From a judgment for defendant, plaintiff brings error.   Reversed.

*Maher & Salsbury*, for appellant.

*Halstead & Halstead*, for appellee.

MOORE, J.   Plaintiff sued defendant to recover for the rent of a store situated in Grand Rapids, from December 1, 1898, to March 24, 1899.   In May, 1898, the parties had an interview at the store in relation to its rental.   The defendant desired to rent it for three years, with the privilege of three years more if he desired.   The plaintiff asked him $1,400 a year rent, payable monthly in advance.   The defendant agreed to pay that rent if plaintiff would make certain repairs, which the plaintiff agreed to make.   To

avoid any misunderstanding as to what repairs should be made, the defendant made a memorandum reading as follows:

"Run partition across store where wanted, not north of jog. Put old linoleum back of partition, and new linoleum to cover floor front of partition, selected by tenant. Paper store front of partition; nice paper, selected by tenant. Toilet room upstairs, and any little repairs needed and not mentioned above. Lease to commence June 1, 1898, and run three years, with privilege of three longer at expiration."

It was agreed that a written lease should be signed later. The plaintiff made the repairs, and the defendant took possession of the store, and paid the rent for several months. A written lease was prepared by plaintiff, and, according to his version, was left with defendant, who said he would look it over and sign it later. It in fact was never signed. According to the version of defendant, the lease contained some minor provisions which were objectionable to him, and he told plaintiff he would not sign the lease as drawn. Defendant continued in the possession of the store until October 1st, when he sold his stock of goods to Mr. Mitts, who occupied the store during October and November, and paid the rent for those months, through defendant's attorney, Mr. Doran, to the plaintiff. A dispute arose between the parties, and the following agreement was made:

"*Memoranda* of agreement between Charles R. Pratt and George G. Steketee *Witnesseth*, that a controversy having arisen between said parties as to the continuing liability of said Pratt to said Steketee for rental of store and basement, number 89 Monroe street, Grand Rapids, Michigan, from and after December 1, 1898, it is hereby agreed by them as follows:

"1. That Edgar A. Maher be authorized to procure a tenant for said store, if he is able to do so upon terms satisfactory to said Steketee.

"2. If such tenant is procured, said Steketee will make no claim upon said Pratt for rental of said store for any

time subsequent to the commencement of such tenant's term of rent.

" 3. Said Steketee does not, by making this agreement, waive any right or claim of right to recover from said Pratt for any time that said store shall not be rented to such tenant subsequent to December 1, 1898.

"4. Said Pratt does not, by making this agreement, admit that he is or will be liable to said Steketee for rent of said store from or after December 1, 1898.

"Dated November 4, 1898.

"CHARLES R. PRATT.
"GEORGE G. STEKETEE."

Mr. Maher found a tenant, whose term began March 24, 1899. It is to recover the rent for the period the store was unoccupied that this proceeding is brought.

To the declaration filed by the plaintiff, the defendant pleaded the general issue, and gave notice of the following defenses:

"1. That the contract of lease between the said parties was a lease at will, terminable by 30 days' notice, and that the same was terminated in due form, in writing, before any of the sums claimed by said plaintiff in his declaration as due him matured, and that the same were not earned by plaintiff.

"2. That plaintiff could have replaced defendant by a tenant before any of the said sums claimed by him were lost by plaintiff by the vacancy of the building described in declaration.

"3. That nothing is due plaintiff from defendant."

In his opening statement to the jury, counsel for defendant claimed that what occurred between the parties was simply an agreement that a lease should be executed, and that no lease was ever made. He claimed that, as the oral talk was for a leasing for a term of years, it was void, and that the tenancy was a tenancy at will. On the defense he showed as follows by Mr. Doran, defendant's attorney:

"I served a copy of this [referring to paper]. I served it on Mr. Steketee personally on October 29, 1898. I served at Mr. Pratt's request or instructions, as his attorney. (Said paper was then read to the jury as follows:)

" 'Please to take notice that, on the 30th day of November next, I shall quit possession and remove from the premises I now occupy, known as the store and basement at No. 89 Monroe street, in the city of Grand Rapids.

" 'Dated this 28th day of October, 1898.

" 'Yours, etc.,

" 'CHARLES R. PRATT.

" 'To GEORGE G. STEKETEE. Owner.'

"The last of November (30th of November), I took the keys—after everything had been cleaned out of the store— I took the keys over.   Well, I went to Maher & Salsbury's office, as they were attorneys for Mr. Steketee, and they were not in town; they were not either of them (Mr. Maher or Salsbury) in; and I went to look for Mr. Steketee, and I found him at the Masonic rooms, playing cards. I tendered him the keys.   He says, 'You give them to Maher & Salsbury.'   I says, 'They are not in town to-day.'   'Well then,' he says, 'they are all right.   Take them and deliver them over to the office.'   I says, 'You are the person to deliver them to.'   He says, 'You take them over there.'

"*Q.* Did you do so?

"*A.* Yes, sir.

"*Q.*   When was that?

"*A.* The 30th of November.

"*Q.* 1898?

"*A.* Yes, sir."

Cross-examination by Mr. Maher:

"*A.* Mr. Steketee did not mention Mr. Salsbury's name. He says, 'Mr. Maher is my attorney;' and I told him I had been over to your office.

"*Q.* At that time you knew of the arrangement that had been made?

"*A.* Yes, sir.

"*Q.* You yourself had delivered to me this paper with Mr. Pratt's signature on it?

"*A.* Yes; that's right.

"*Q.* You went there to deliver the key to me, in the first instance, before going to Mr. Steketee?

"*A.* Yes, sir.   Well, I wanted to see you about whether you would consider it all right for me to deliver it to you, or if I should see Mr. Steketee and deliver it personally to him, and found you were not in town; that is what the office informed me.

"*Q.* You left the key there at my office?

"*A.* I did, after I had seen Mr. Steketee, and he told me to leave it at your office. I offered it to him, and he told me it was all right to leave it at your office."

Mr. Steketee's version of the transaction is as follows:

"*Q.* Do you know what became of the key or keys of that building on their surrender by Mr. Pratt?

"*A.* My attorney, I believe, had it. I do not know when it was they were turned over to him. I remember of their being brought to me by Mr. Doran. I don't remember when that was. He brought them to me. I says: 'I have nothing to do with them. You take them to my attorney.'

"*Q.* Mr. Maher was your attorney in that transaction, the same as in this one?

"*A.* Yes, sir.

"*Q.* Didn't Mr. Doran say to you at that time that your attorney was not in the city?

"*A.* No, sir.

"*Q.* And that you stated to him he should leave the keys in the office?

"*A.* He did not."

I have quoted all of the testimony upon the subject of the surrender of the keys.

The plaintiff requested the judge to direct a verdict in his favor. This he declined to do. The defendant requested the court to instruct the jury that the tenancy was at will, and was terminated by the notice served in October, and defendant was under no obligation to pay rent after November. This the judge declined to do. He instructed them that the bargain created a tenancy from year to year, or at least for one year, and then proceeded to tell them that the parties might surrender their rights under such a lease, and told them, if Mr. Steketee accepted the key, intending to surrender his rights under the lease, that he could not recover. This last proposition was error. It was the theory of the defendant, from the time he interposed his plea until he filed his request to charge, that the tenancy was one at will, which had been terminated by notice. There was no claim in the case,

until made by the circuit judge, that, by the delivery made of the key by Mr. Doran, the plaintiff had changed the legal relations, whatever they were, which existed between the parties.   It is evident Mr. Doran was seeking by giving the notice in October to terminate the tenancy in November, which he construed to be a tenancy at will. Giving his version of what occurred at the time he offered the key to the plaintiff the most favorable construction possible to the defendant, it is consistent with the idea that he was referred by the plaintiff to Mr. Maher because, by the agreement between the parties, Mr. Maher was to get a tenant as soon as he could.   It fails entirely to show that Mr. Steketee intended by that act to surrender the rights which he claimed existed by virtue of the bargain made between the parties.   In *Stewart* v. *Sprague*, 71 Mich. 50, it is said, "In all cases of a leasing, to show a surrender, a mutual agreement between the lessor and the original lessee that the lease is terminated must be shown." It must be shown the lessor and the lessee mutually agreed to a surrender of the term.   This was not done, and the court erred in allowing the jury to so find, in the absence of any testimony tending to show that it was done.   *Scripps* v. *Reilly*, 38 Mich. 10.

It was urged in the court below, and it is urged here, that the tenancy was a tenancy at will; counsel citing, among other cases, *Barrett* v. *Cox*, 112 Mich. 220.   In that case Justice MONTGOMERY said:

"In the present case, the oral lease being void, there was no definite term of occupancy fixed by the contract. Neither was there a reservation of annual rent, or rent payable at any stated intervals.   Under these circumstances, we think a tenancy from year to year cannot be said to have been created."

In the case at bar there was to be an annual rental of $1,400, payable monthly in advance.   In *Huntington* v. *Parkhurst*, 87 Mich. 38 (24 Am. St. Rep. 146), there is an exhaustive discussion of this question, and it is shown that the tenancy created here was from year to year, or at least was for one year.

Under the facts as shown upon the trial, a verdict should have been directed in favor of the plaintiff.

Judgment is reversed, and new trial granted.

GRANT, C. J., MONTGOMERY and LONG, JJ., concurred. HOOKER, J., took no part in the decision.