THE COMMUNITY TRACTION CO. *v.* NEORR, ADMR.

(Decided February 17, 1936.)

*Messrs. Welles, Kelsey & Cobourn,* for plaintiff in error.

*Messrs. Brady & Gallagher,* for defendant in error.

LLOYD, J. Henry Neorr died as a result of injuries received in a collision occurring about 3:30 p. m. on April 16, 1934, between a bus of The Community Traction Company operated in a westerly direction on West Bancroft street approaching Maplewood avenue and a Dodge sedan of the decedent operated by him on Maplewood avenue in a northerly direction toward Bancroft, the collision occurring about the middle of the intersection of the two streets.

West Bancroft is a main thoroughfare, and Maplewood avenue is a subordinate intersecting street. In the Court of Common Pleas a judgment was entered upon a verdict awarding damages to the defendant in error. The principal contested questions, as is usual in such cases, were the alleged negligence of the traction company and the claimed contributory negligence of the decedent, and on these questions the evidence was such that inferences from erroneously admitted statements by witnesses might well have determined whether the verdict of the jury would be in favor of the administrator of decedent or of the company, accordingly as the jurors were impressed thereby.

Among the grounds of error alleged in the petition in error of the traction company, our particular attention is called to three:

1. That there is no evidence tending to show negligence on the part of the traction company, and, in any event, the evidence clearly shows the decedent to have been guilty of contributory negligence.

2. That the trial court admitted incompetent evidence, and

3. That it erred in its general charge to the jury.

Many questions were asked of Calhoun, the bus driver, by counsel for defendant in error as to what he had been doing prior to the time of the collision, it being stated by counsel that he expected to show that the driver had been drinking either in a saloon or else-

where. To each question asked of him as to whether he "had anything to drink" Calhoun answered "No, sir," and finally counsel said to him "Therefore you could not have had any smell of beer on your breath when you drove up to the Bancroft Garage after this accident," and again he answered "no, sir." Two or three typewritten pages of the record relate solely to questions and answers of this nature interspersed with objections and exceptions by counsel for plaintiff in error, and a great deal of suggestive talk among counsel and the court as to the subject under discussion, counsel for defendant in error persistently and repeatedly insisting that he would be able to show that Calhoun had been drinking intoxicants shortly before the accident.

Certainly these repeated intimations that Calhoun had been drinking might have left an erroneous impression with the jury that such was the fact, especially in view of the improperly admitted incompetent testimony of Edith Cause, who at the time of the collision was the wife of Calhoun, from whom subsequently she procured a divorce. The record discloses that this witness was called "in rebuttal," presumably to refute the negative answers of Calhoun as to his having been drinking shortly before the collision. After some preliminary questions as to where she lived and her relationship to Calhoun, she stated that she saw him in the bus immediately after the collision and talked with him from where she was standing, about two or three feet distant. The court refused to permit her to testify as to what was said, but, over objection and exception, allowed the following:

"Q. State whether or not you noticed anything about Mr. Calhoun's breath? A. Beer.

"Q. You said beer? A. Yes.

"Q. What do you mean by that, did you smell beer? A. Yes, sir,

"Q. Was it strong enough for you to smell it two or three feet away? A. Yes, sir."

She was the last witness called at the trial and her "smell of beer," the only evidence offered or received as to the claimed intoxication of Calhoun, was the last impression left with the jury. By reason of Section 11494, General Code, she was not competent as a witness to thus testify, no other person or persons than herself and Calhoun being present. There was no question as to the ground of the objection and exception, since the record shows that the trial judge expressly excluded the conversation the witness claimed to have then had with her husband. None of the other witnesses intimated or were asked any questions as to the suggested intoxication of Calhoun. Further reference to this improperly admitted testimony was not made by the court either in his charge or otherwise, and the jurors were entitled to draw such inferences therefrom as they deemed proper.

As said in the syllabus of *Scripps* v. *Reilly*, 38 Mich., 10:

"Everything tending to influence a jury but not legally admissible should be kept from their knowledge during the trial."

As further said by that court in its opinion at page 15 thereof:

"An impression once made upon the mind of a juror, no matter how, will have more or less influence upon him when he retires to deliberate upon the verdict to be given, and no matter how honest or conscientious he may be, or how carefully he may have been instructed by the court to not permit such incompetent matters to influence him, or have any bearing in the case, it will be very difficult, if not impossible, for him to separate the competent from the incompetent, or to say to what extent his impressions or convictions

may be attributed to that which properly should not have been permitted to come to his knowledge.''

The above case was cited in the opinion of this court in *Watkins* v. *Linver,* 48 Ohio App., 268, and what this court there said is equally applicable to the situation now confronting us. We there said:

''In the instant case, the quality and quantity of the evidence produced by the respective parties at the trial is so evenly balanced that it is not unlikely, and we think probable, that the foregoing colloquy relative to what counsel claimed left its imprint on the minds of the jurors and affected their determination as to the verdict.''

Our judgment therefore is that the admission in evidence of the testimony of this incompetent witness was prejudicial error.

The court in its general charge to the jury rightly refrained from reading the pleadings as a substitute for a statement of the issues being tried, but failed to state with particularity the issues made by the pleadings, but an analytic reading of the charge discloses that the omissions were favorable to plaintiff in error and therefore the plaintiff in error was not prejudiced thereby.

The judgment of the Court of Common Pleas is reversed and the cause remanded for a new trial.

*Judgment reversed and cause remanded.*

OVERMYER and CARPENTER, JJ., concur.