829 F.2d 38
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
James K. CAMPBELL, et al., Plaintiffs-Appellees, Cross-Appellants,
v.
SHEARSON/AMERICAN EXPRESS INC., and J. Gary Morgan,
Defendants-Appellants, Cross-Appellees.
 Nos. 85-1703, 85-1714
 United States Court of Appeals, Sixth Circuit.
 September 9, 1987.
 
 Before RYAN and BOGGS, Circuit Judges, and BAILEY BROWN, Senior Circuit Judge.
 BOGGS, Circuit Judge.
 
 
 1
 The district court awarded James K. Campbell a refund of commissions, exemplary damages and attorneys fees, but declined to award consequential damages in his suit against his securities broker and the broker's firm. The broker and his firm appeal the awards of exemplary damages and attorneys fees. Campbell appeals the denial of consequential damages. Because we find no support in Michigan law for an award of consequential damages, we affirm the decision as to consequential damages. However, as we also find no support in Michigan law for the award of exemplary damages and attorneys fees, we reverse the decision as to those awards.
 
 
 2
 * In 1970, James K. Campbell, a multi-millionaire, was a principal stockholder and member of the board of the Newberry Bank in Newberry, Michigan, where he met J. Gary Morgan, who was analyzing the bank's municipal bond portfolio for its board. Campbell asked Morgan about various investments controlled by Campbell and members of his family (herein referred to as Campbell).
 
 
 3
 Over the years, a personal and business relationship developed between Campbell and Morgan. Morgan acted as Campbell's investment advisor and broker. Morgan moved to four securities firms, and Campbell transferred his account each time to follow him. Morgan has been employed by Shearson/American Express or one of its predecessor companies since 1976 (codefendants Morgan and Shearson/American Express hereinafter referred to as Morgan). The district court found that Campbell was not 'a passive investor who was blindly led through these investments. Instead, the Court perceives Campbell to have been an active partner with Morgan, who . . . understood and accepted the risks inherent in his municipal bond investment program.'
 
 
 4
 This business and personal relationship continued until 1979. Campbell was always in or near the highest tax brackets. He often expressed his satisfaction with his substantial municipal bond portfolio, which provided a large tax-free income.
 
 
 5
 When inflation and interest rates soared in late 1979 and 1980, the value of municipal bonds fell. Morgan suggested that Campbell 'tax swap' his municipal bonds to create losses to offset capital gains on other investments. Campbell lost money in other investments as well. In early 1981, Campbell learned of the amount of commissions paid Morgan on the purchase and sale of municipal bonds in his accounts. Campbell had known that there was some amount he had to pay in commissions, but hadn't associated a particular dollar amount with each transaction. Campbell later testified that he was 'dumbfounded,' 'shocked,' 'embarrassed' and felt 'hurt.'
 
 
 6
 Campbell sued Morgan, alleging that: (1) long term municipal bonds were unsuitable for him, particularly in comparison with short to medium term municipal securities; (2) Morgan wrongfully suggested tax swaps solely to generate excessive commissions; and (3) the true nature and amount of Morgan's commissions were not disclosed. Campbell sued for rescission, exemplary damages, and attorneys fees.
 
 
 7
 The district court, following a six-day bench trial, granted plaintiffs recovery based on: (1) breach of fiduciary duty; (2) common law fraud; (3) innocent misrepresentations; (4) negligence; (5) violation of the Michigan Uniform Securities Act; and (6) violation of Sec. 10(b) of the Securities Exchange Act of 1934 and Rule 10(b)-5, but only as to the commissions Campbell paid Morgan. The district judge therefore awarded as damages only the amount of commissions Campbell had paid, $155,988, plus exemplary damages of $250,000 and attorneys fees of $64,698.75.
 
 II
 
 8
 Campbell argues that Section 410(a) of Michigan Uniform Securities Act, Mich. Comp. Laws Sec. 451.810 (Mich. Stat. Ann. Supp. 1987), ( which parallels Sec. 12(2) of the 1933 Securities Act, 15 U.S.C. Sec. 77(1)) provides for strict liability, requiring rescission when there is any material misrepresentation or omission in the sale of a security. Materiality, under Michigan law, is that which 'a reasonable investor might have considered important to his decision.' People v. Cook, 89 Mich. App. 72, 83, 279 N.W. 2d 579, 585 (1979). Once the district court had determined that there was a Sec. 410 violation, he contends, it should have granted the full statutory remedy, not merely attorneys fees, according to Campbell.
 
 
 9
 Campbell's argument fails to distinguish between reliance and causation, a distinction clearly laid out in Huddleston v. Herman & MacLean, 640 F.2d 534 (5th Cir. 1981), aff'd in part, rev'd in part on other grounds, 459 U.S. 375 (1983):
 
 
 10
 Reliance is a causa sine gua non, a type of 'but for' requirement: had the investor known the truth he would not have acted. Causation requires one further step in the analysis: even if the investor would not otherwise have acted, was the misrepresented fact a proximate cause of the loss? The plaintiff must prove not only that, had he known the truth, he would not have acted, but in addition that the untruth was in some reasonably direct, or proximate, way responsible for his loss. The causation requirement is satisfied in a Rule 10b-5 case only if the misrepresentation touches upon the reasons for the investment's decline in value. If the investment decision is induced by misstatements or omissions that are material and that were relied upon by the claimant, but are not the proximate reason for his pecuniary loss, recovery under the Rule is not permitted. Absent the requirement of causation, Rule 10b-5 would become an insurance plan for the cost of every security purchased in reliance upon a material misstatement or omission.
 
 
 11
 640 F.2d at 549 (footnotes and citations omitted)
 
 
 12
 This requirement is commonly referred to as 'loss causation.' The Sixth Circuit has recognized loss causation as an element of a 10b-5 claim. Fryling v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 593 F.2d 736, 743-44 (6th Cir. 1979). See also Rolf v. Blyth, Eastman Dillon & Co., 570 F.2d 38, 49 (2d Cir.), cert. denied 439 U.S. 1039 (1978), on remand, Fed. Sec. L. Rep. (CCH) P96,919 (S.D.N.Y. 1979), No. 73 Civ. 2967 (S.D.N.Y. Jan. 8, 1980), aff'd in part and rev'd in part, 637 F.2d 77 (1980); In re Catanella and E.F. Hutton & Co., 583 F.Supp. 1388, 1416 (E.D. Pa. 1984).
 
 
 13
 Thus Campbell is arguing that only 'transaction causation,' not 'loss causation,' need be proven to establish a violation of the Michigan Uniform Securities Act. See Garnatz v. Stifel, Nicolaus & Co., 559 F.2d 1357, 1360-1361 (8th Cir. 1977), cert. denied, 435 U.S. 951 (1978); Chasins v. Smith, Barney & Co., 438 F.2d 1167, 1173 (2nd Cir. 1970). However, in both Garnatz and Chasins there was a failure to disclose material information about the nature of the underlying investment, unlike the present case. Further, decisions under Sec. 11 and Sec. 12 of the 1933 Act suggest the propriety of requiring loss causation by holding that a defendant is not liable for damages which he can prove did not result from his misconduct. See Collins v. Signetics Corp., 605 F.2d 110, 114 (3rd Cir. 1979); Feit v. Leasco Data Processing Equipment Corp., 332 F.Supp. 544, 586 (E.D.N.Y. 1971); Fox v. Glickman Corp., 253 F.Supp. 1005, 1010 (S.D.N.Y. 1966). In considering the difference between loss transaction and causation transaction, Sec. 11 of the 1933 Act is similar enough to Sec. 12 that Sec. 11 cases are also instructive as to Mich. Comp. Laws Sec. 451.810.
 
 
 14
 Campbell also argues that once the district court concluded that Morgan breached his fiduciary duties, rescission was the proper remedy because it was Morgan's stated disinterest which led Campbell to permit Morgan to manage the account. Campbell argues that he consented to Morgan's actions because he viewed him as a son who was acting in his best interests. He did not consent to the actions of a salesman making substantial commissions when he agreed to buy or sell bonds. Campbell asserts that this breach of the fiduciary duty to disclose taints the entire transaction, as a matter of common law. Once the district court determined that Campbell was entitled to recover on his common law claims of breach of fiduciary duty, fraud, innocent misrepresentation, and negligence, he should have received rescissionary damages, Campbell asserts.
 
 
 15
 However, the district court permitted recovery only of Morgan's commissions. Because Campbell has not shown that the fiduciary breach created damages beyond the commissions, rescission is not available to him. See Findlater v. Dorland, 152 Mich. 301, 116 N.W. 410 (1908); Seaboard Finance Co. v. Barnes, 2 Mich. App. 5, 138 N.W.2d 567, rev'd on other grounds, 378 Mich. 627, 148 N.W.2d 756 (1967).
 
 
 16
 We have carefully considered Campbell's other arguments that he be permitted to recover the losses he incurred in selling his bonds for less than he paid for them, and find them to be equally without merit.
 
 III
 
 17
 The district court awarded exemplary damages. It does not appear to us that a Michigan state court would allow recovery of exemplary damages based on the type of harm Campbell experienced. As a court sitting in diversity jurisdiction, we decline to extend the recovery of exemplary damages to fraudulent and reckless acts arising in the context of this type of fiduciary relationship.
 
 
 18
 Our review of Michigan case law indicates that exemplary damages can be recovered in Michigan in two circumstances. In the landmark case of Kewin v. Massachusetts Mutual Life Insurance Company, 409 Mich. 401, 295 N.W.2d 50 (1980), the Michigan Supreme Court held that exemplary damages are available if 1) a party has committed a malicious or wanton tort, or 2) the agreement at issue is personal in nature, dealing with matters of mental concern or solicitude. Thus,
 
 
 19
 those cases which permit recovery of exemplary damages as an element of damages involve tortious conduct on the part of the defendant. See, e.g. McFadden v. Tate, 350 Mich. 84, 85 N.W.2d 181 (1957) (assault and battery); Scripps v. Reilly, 38 Mich. 10 (1878) (libel); Welch v. Ware, 32 Mich. 77 (1875) (assault and battery). An award of exemplary damages is considered proper if it compensates a plaintiff for the 'humiliation, sense of outrage, and indignity' resulting from injuries 'maliciously, wilfully and wantonly' inflicted by the defendant. McFadden, supra, 350 Mich. 89, 85 N.W.2d 181. The theory of these cases is that the reprehensibility of the defendant's conduct both intensifies the injury and justifies the award of exemplary damages as compensation for the harm done the plaintiff's feelings.
 
 
 20
 295 N.W.2d at 55.
 
 
 21
 Exemplary damages are also available when a party infringes an interest that
 
 
 22
 is primarily personal rather than pecuniary in nature, however, jurists and scholars have been more hesitant to find emotional distress damages to be violative of the Hadley rule[, which permits damages if the injury is reasonably forseeable at the time of agreement]. In such instances, it should have been evident to the defaulting promisor at the time of contract formation that breach would likely occasion mental distress for reasons that do not stem from the pecuniary loss alone . . .. Illustrative of such 'personal' contracts are contracts to marry, contracts between carriers and passengers, contracts of innkeepers and guests, contracts for the disposition of dead bodies, contracts for the delivery of death messages, contracts for public entertainment or amusement, and contracts to provide care, room and board. As stated by Arthur Linton Corbin, an element common to all of these contract actions is that they involve situations in which 'personal feelings are most deeply involved and in which mental suffering is likely to be most poignant', despite their literal commercial nature.
 
 
 23
 295 N.W.2d at 61-62 (footnotes omitted).
 
 
 24
 Thus, Campbell has two means to establish his entitlement to exemplary damages. He must either show that Morgan committed a malicious or wanton tort in addition to the breach of his fiduciary duties, or he must show that the agreement with Morgan was personal in nature and coupled with matters of mental concern or solicitude, similar to an agreement with an innkeeper or to be married, and not concerned primarily with profit.
 
 
 25
 The award of exemplary damages cannot stand on either ground. The record makes it abundantly clear that Morgan's failure to explain clearly to Campbell the cost of his commissions was his sole legally blameworthy act. This precludes an award of damages based on an additional tort.
 
 
 26
 The relationship between Morgan and Campbell which forms the basis for any liability was inherently a commercial one. Although there is ample support in the record for the district court's conclusion that 'James Campbell's testimony [was] fully credible with respect to the trust he reposed in Morgan and his outrage and dismay upon learning that this trust was breached,' this does not affect the basically commercial nature of those aspects of the relationship complained of here. To hold otherwise would be to open the possibility of exemplary damages in every case involving a breach of fiduciary duty by a defendant who was a friend of the plaintiff. Campbell's feelings establish only humiliation, sense of outrage, indignity or anguish, any of which provides a necessary but not sufficient condition for exemplary damages under Michigan law. The basis of the agreement between Morgan and Campbell was to make money for Campbell. Thus, Campbell is not eligible for an award of exemplary damages based on a theory of the personal nature of this agreement.
 
 IV
 
 27
 Morgan argues that the district court erred in its calculation of the commissions to be refunded to Campbell by including the nominal commissions Campbell conceded he expected to pay, and by including commissions allegedly paid by the bond issuers rather than Campbell. However, it would be inequitable to permit Morgan to profit, even nominally, from a relationship which he maintained only through fraud and recklessness. Morgan also asserts that a portion of his commissions were derived from the issuers of the bonds, rather than Campbell. However, the record does not substantiate this contention. Therefore, we decline to alter the district court's award of $155,988 in refunded commissions.
 
 V
 
 28
 Morgan asserts that the district court's award of attorneys fees under the Michigan Uniform Securities Act was in error, arguing that under Mich. Comp. Laws Sec. 451.810(a)(2)-(3) (Mich. Stat. Ann. Supp. 1987), attorneys fees are recoverable upon rescission but not upon award of rescissionary damages. Because this argument relies upon an extremely strained interpretation of the statute, it is not surprising that Morgan is unable to cite any authority in its support. The argument is not persuasive.
 
 
 29
 However, our reading of Sec. 451.810(a)(2)-(3) suggests that attorneys fees are available only to a plaintiff who establishes loss causation. The clear purpose of Sec. 451.810(a)(2)-(3) is to make a defrauded securities buyer whole. We infer from this that Sec. 451.810(a)(2)-(3) is intended to apply only to those cases in which the defrauding seller is responsible for the buyer's loss. We therefore conclude that to award attorneys fees in the absence of an award of rescissionary damages would not fulfill the purpose of Sec. 451.810(a)(2)-(3) because there would be no loss causation. As the district court found Morgan responsible for transaction causation, but not loss causation, we hold that Campbell was not eligible for attorneys fees under Sec. 451.810(a)(2)-(3). As our review of the record reveals no other basis for an award of attorneys fees, we reverse that award.
 
 
 30
 The decision of the district court is therefore REVERSED as regards the award of exemplary damages and attorneys fees, and otherwise AFFIRMED.